******************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.
******************************************

ERIC KURISOO *v.* HARRY ZIEGLER ET AL.
(AC 38659)

Sheldon, Beach and Harper, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants, Z and M Co., for negligence in connection with personal injuries he had sustained in a motor vehicle accident when his vehicle was struck by a vehicle driven by Z. As to M Co., the plaintiff initially brought this action claiming that M Co.'s direct negligence had proximately caused his injuries. M Co. moved for summary judgment on the only count then pending against it, claiming that it did not owe a duty of care to the plaintiff because M Co.'s alleged negligence did not create a reasonably foreseeable risk that the alleged harm would occur, as required under the first prong of the legal duty analysis. The trial court rejected M Co.'s argument, but granted M Co.'s motion for summary judgment on the ground that, under the second prong of the legal duty analysis, M Co.'s responsibility for its alleged negligence should not extend to the plaintiff under these circumstances for reasons of public policy, and that there was no need for a determination of the factual issue of whether the plaintiff's injuries were reasonably foreseeable to M Co. Subsequent to M Co.'s filing of its first summary judgment motion, but prior to the trial court's ruling on that motion, the plaintiff amended his complaint to allege that M Co. was also vicariously liable for the negligence of Z, who had proximately caused his injuries. In response, after the court had ruled on M Co.'s first motion for summary judgment, M Co. filed a motion for summary judgment on the plaintiff's vicarious liability claim on the sole ground that vicarious liability could not be established because Z was not acting as the agent, servant or employee of M Co. at the time of the collision that caused the plaintiff's injuries. The court again rejected the argument raised by M Co., concluding, inter alia, that the plaintiff had failed to establish the absence of a genuine issue of material fact as to whether Z was acting as M Co.'s agent, but again rendered summary judgment in favor of M Co., finding that, as a matter of public policy, M Co. owed no legal duty to the plaintiff at the time of its alleged negligence that proximately caused the plaintiff's injuries. On appeal to this court, the plaintiff claimed, inter alia, that the trial court improperly rendered summary judgment in favor of M Co. on both of its motions because the court based its rulings on a ground not raised in M Co.'s summary judgment motions. *Held* that both of M Co.'s motions for summary judgment should have been denied, the trial court having lacked the authority to render summary judgment for M Co. because the court based its summary judgment rulings on a ground not raised by M Co. in its motions, namely, that M Co.'s responsibility for its alleged negligence should not extend to the plaintiff under the circumstances of this case for reasons of public policy; in ruling on both the first and second motion for summary judgment, the court rejected the only basis upon which M Co. claimed it was entitled to judgment as a matter of law, specifically, that it owed no duty of care to the plaintiff.

Argued February 8—officially released July 4, 2017

(Appeal from Superior Court, judicial district of New London, Zemetis, J. [motion for summary judgment]; Vacchelli, J. [summary judgment])

*Procedural History*

Action to recover damages for the defendants' alleged negligence, brought to the Superior Court in the judicial district of New London, where the court, *Zemetis, J.*, granted the motion for summary judgment filed by the defendant Mystic Seaport Museum as to one count of the complaint; thereafter, the court, *Vacchelli, J.*,

granted the motion for summary judgment filed by the defendant Mystic Seaport Museum and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed; further proceedings.*

*Mary M. Puhlick*, for the appellant (plaintiff).

*Alexandra J. Zeman*, with whom, on the brief, were *Michael P. Kenney* and *Kate J. Boucher*, for the appellee (named defendant).

*Joseph M. Musco*, for the appellee (defendant Mystic Seaport Museum).

*Opinion*

SHELDON, J. The plaintiff, Eric Kurisoo, appeals from the summary judgment rendered by the trial court in favor of the defendant Mystic Seaport Museum d/b/a Mystic Seaport. On September 20, 2013, the plaintiff was injured when the motorcycle he was operating collided with a motor vehicle operated by Harry Ziegler,[1] who, at the time of the collision, was participating in an antique car tour sponsored by the defendant. The plaintiff initially brought this action, claiming that its direct negligence had proximately caused his injuries. Subsequently, he amended his complaint to allege, as well, that the defendant was vicariously liable for the negligence of Ziegler, who had proximately caused such injuries. The court rendered summary judgment in favor of the defendant on both of the plaintiff's claims, finding, as a matter of public policy, that it owed no duty to the plaintiff at the time of its direct or vicarious negligence. On appeal, the plaintiff claims that the court improperly rendered summary judgment in favor of the defendant on both of his claims because it based its rulings on a ground not raised in the defendant's summary judgment motions. We agree with the plaintiff, and thus reverse the judgment of the trial court.[2]

The trial court found that the following facts were undisputed. "[The defendant] is a nonprofit, educational institution that operates Mystic Seaport [(seaport)], located in Mystic. . . . It is a recreation of a nineteenth century coastal village with historic ships, and it offers related exhibits and attractions to the public. It has, since 1996, sponsored an antique car show featuring pre-1930 vintage automobiles on the grounds of the seaport called the 'By Land and By Sea Antique Vehicle Show.' The show permits vintage car owners to exhibit their vehicles for public viewing on a Sunday. Although there is an admission fee for entry to the seaport, there is no extra charge for viewing the Sunday antique auto show.

"At the time of the accident . . . Ziegler registered his antique car for inclusion in the show. He was required to and did pay a $40 registration fee to be able to enter his car in the show. As part of the weekend activities, [the] seaport staff and volunteers organized driving tours on the Friday and Saturday before the show for the entrants to give them the opportunity to see the local scenery and attractions and to allow them to exhibit their vehicles to the public.

"On Friday, September 20, 2013, Ziegler participated in a [thirty] mile scenic tour of the Mystic/Stonington area arranged by the event volunteers and staff. About [forty] or [fifty] cars were involved. The participants gathered at the Old Mystic Village north parking lot and were provided with printed driving directions, routes and a map to follow for the event's tour that particular

day. In addition, the participants were provided with banners to place on their antique cars by event volunteers and staff, which stated, 'Follow Me on Sunday to Mystic Seaport to the Mystic Seaport Antique Vehicle Show.' . . . Ziegler affixed the banner to his car prior to the tour commencing, and then he joined the tour. It was not a parade of cars, with one following the other, and event organizers did not arrange for personnel to guard intersections or direct traffic along the route. Cars did not follow one after the other. Rather, each driver simply proceeded independently and followed the directions given at the start. Although participants were not required to follow the route, it was assumed that most participants would stay together and follow the instructions. They were instructed to follow the rules of the road, and be vigilant at intersections. They were encouraged to remain on the prescribed route because [the] seaport arranged for a 'trouble car' to help with breakdowns along the route, although there was no trouble car available on the day of the accident.

"Ziegler did follow the directions he was given. While on Coogan Boulevard at the intersection with Jerry Browne Road in North Stonington, he stopped at a stop sign, then proceeded to turn left (northbound) onto Jerry Browne Road, when the collision [with the plaintiff] occurred."

On March 20, 2014, the plaintiff commenced this action by way of a two count complaint, one count against Ziegler and the other count against the defendant. As to the defendant, the plaintiff alleged that it had negligently caused his injuries by failing to provide an escort for the procession, failing to warn the public regarding the route of the procession, failing to properly secure the intersection where the collision occurred, failing to properly instruct or train the participants in the procession, and failing to obtain a permit for the procession. On January 21, 2015, the plaintiff amended his complaint to add a third count, claiming that the defendant was vicariously liable for the negligence of Ziegler, who had caused his injuries.

On December 18, 2014, prior to the filing of the plaintiff's amended complaint, the defendant moved for summary judgment on the sole count then pending against it, which sounded in direct negligence. The defendant argued in support of its motion that it did not owe a duty to the plaintiff because "the defendant's negligence, as alleged, [did not create] a reasonably foreseeable risk that . . . Ziegler would pull out from a stop sign into the path of the plaintiff's oncoming motorcycle when it was not safe to do so." In its memorandum of decision, filed on May 22, 2015, the court disagreed, explaining: "The question is whether a reasonable jury could find that [the defendant] should have anticipated that a motorist might be injured by a vehicle participating in the antique vehicle show without [the defendant]

employing additional safety precautions on public road-ways. Because reasonable people could disagree as to whether [the defendant] should have anticipated a harm of the general nature of that suffered by the plaintiff, reasonable foreseeability in the present case would be a question for the jury." The court went on, however, to consider "whether public policy militates against imposing a duty under the circumstances of this case." On that issue, which the defendant had not raised in its motion and the parties had not briefed or argued, the court concluded: "If one who provides directions to a motorist may be liable for the consequences of that motorist's failure to follow the rules of the road while en route and not because of the route directions provided, significant costs would be imposed on soci-ety. Because public policy considerations preclude the imposition of a duty on [the defendant], there is no need for a jury to determine the factual issue of whether the injuries suffered by the plaintiff were reasonably foreseeable to [the defendant]." On that sole ground, the court rendered summary judgment in favor of the defendant.

On July 29, 2015, the defendant filed a second motion for summary judgment on the plaintiff's claim of vicari-ous liability for the negligence of Ziegler, on the sole ground that vicarious liability could not be established because Ziegler was not acting as the agent, servant or employee of the defendant at the time of the collision that caused the plaintiff's injuries. In its November 20, 2015 memorandum of decision, the court found that "there are multiple facts in the record tending to estab-lish that [Ziegler] was an agent" and, thus, "[a] trier of fact could conclude that . . . Ziegler was an agent [of the defendant] during the procession." The court con-cluded, on that basis, that the defendant had failed to establish the absence of a genuine issue of material fact as to whether Ziegler was its agent at the time of his alleged negligence, or thus that it was entitled to judg-ment on the plaintiff's vicarious liability claim as a mat-ter of law. Even so, the court went on to grant summary judgment in favor of the defendant on the unpleaded, unargued basis of its earlier ruling on the defendant's first motion for summary judgment, to wit: that, on the basis of public policy considerations, the defendant owed the plaintiff no duty of care at the time of the alleged negligence that proximately caused his injuries. The court explained its reasoning as follows: "Absent a duty, [the defendant] cannot be held liable, vicariously or otherwise. To permit vicarious liability where there is no direct liability would be to accomplish indirectly that which could not be accomplished [directly]. The law does not permit that type of legal circumvention." This appeal followed.

"Practice Book § 17-49 provides that summary judg-ment shall be rendered forthwith if the pleadings, affida-vits and any other proof submitted show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A party moving for summary judgment is held to a strict standard. . . . To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *Ferri* v. *Powell-Ferri*, 317 Conn. 223, 228, 116 A.3d 297 (2015).

The plaintiff challenges the court's summary judgment rulings on both of his claims against the defendant on the basis that each was improperly based on a ground that the defendant had not raised in its summary judgment motions, and which the parties had not briefed or argued. The plaintiff claims initially that the court improperly rendered summary judgment in favor of the defendant on his claim of direct negligence because it improperly determined that the defendant owed no duty to him based on public policy considerations, which had not been raised or argued in support of its first motion for summary judgment. We agree.

"Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Although it has been said that no universal test for [duty] ever has been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury [that] resulted was foreseeable . . . . [T]he test for the existence of a legal duty entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant

knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." (Internal quotation marks omitted.) *Ruiz* v. *Victory Properties, LLC*, 315 Conn. 320, 328–29, 107 A.3d 381 (2015).

Based on the foregoing principles, the determination of the existence of a legal duty entails a two-pronged analysis. In its first motion for summary judgment, the defendant challenged the existence of a duty to the plaintiff only under the first prong of that analysis— that the harm alleged by the plaintiff was not reasonably foreseeable. The defendant did not assert any argument whatsoever under the second prong—that its responsibility for its alleged negligence should not extend to the plaintiff under these circumstances for reasons of public policy.[3] Consequently, and understandably, the plaintiff did not brief that issue in opposition to the defendant's motion for summary judgment. This court has held that a trial court lacks authority to render summary judgment on a ground not raised or briefed by the parties that does not implicate the court's subject matter jurisdiction. *Greene* v. *Keating*, 156 Conn. App. 854, 860, 115 A.3d 512 (2015) ("[t]he court's function is generally limited to adjudicating the issues *raised by the parties* on the proof they have presented" [emphasis in original; internal quotation marks omitted]); see also *Bombero* v. *Bombero*, 160 Conn. App. 118, 131–32, 125 A.3d 229 (2015). Thus, because the court improperly based its summary judgment ruling on a ground not raised by the defendant in its motion, and rejected the only basis upon which the defendant claimed it was entitled to judgment as a matter of law in its first motion for summary judgment, that motion should have been denied.

As to the defendant's second motion for summary judgment, the court similarly rejected the sole argument advanced by the defendant in support of its motion, but rendered summary judgment for the defendant on an unraised ground. The court based its ruling on that motion on the earlier improper determination that the defendant owed no duty to the plaintiff on public policy grounds, which was not raised by the defendant in either of its summary judgment motions. The summary judgment on the plaintiff's vicarious liability claim thus cannot stand.

The judgment is reversed and the case is remanded with direction to deny both of the defendant's motions for summary judgment, and for further proceedings according to law.

In this opinion the other judges concurred.

[1] Ziegler is also a defendant in this action. Because this appeal deals only

with the summary judgment rendered in favor of Mystic Seaport Museum, any reference to the defendant herein refers to Mystic Seaport Museum only. We note that Ziegler has filed a brief in this appeal supporting the position of the plaintiff in accordance with Practice Book § 67-3.

[2] The plaintiff also claims that the court's public policy analysis was flawed on its merits. Because we reverse the judgment of the trial court on the ground that the public policy issue was not properly before it, we need not address it now.

[3] The defendant contends that its citation of cases that involve public policy, among other legal issues, is sufficient to have raised the issue for determination by the trial court, even though it did not actually assert a public policy argument in this case. We decline to countenance such an argument.

Other than that argument, which is contained in a single footnote of its brief, the defendant does not address the plaintiff's claims on appeal. Rather, the defendant reasserts the arguments that it made to the trial court in its motions for summary judgment, both of which were rejected by the trial court. The defendant has not challenged those determinations on appeal, nor has it stated an alternative ground to affirm the court's summary judgment. Those arguments are thus not properly before this court.

———————————————